STANLEY MELECOSKY, Plaintiff-Appellant, v. McCARTHY BROTHERS COMPANY *et al.*, Defendants-Appellees.

Fourth District    No. 4—85—-0374

Opinion filed February 10, 1986.

Lester Berry Smith, Ltd., of Peoria (Charles J. Hughes and Lester Berry Smith, of counsel), for appellant.

Robert P. Moore and Richard R. Harden, both of Moore & Associates, of Champaign, for appellee McCarthy Brothers Company.

Craig J. Causeman, of Thomas, Mamer & Haughey, of Champaign, for appellee C. Iber & Sons, Inc.

JUSTICE SPITZ delivered the opinion of the court:

Plaintiff appeals from a judgment entered on a jury verdict, in favor of the plaintiff and against both defendants, in the circuit court of Champaign County. Plaintiff was awarded $40,000 for damages sustained as a result of the defendants' alleged violation of the Illinois Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, par. 60 *et seq.*).

In October of 1980, plaintiff, Stanley Melecosky, was working as an apprentice welder on the construction of a multistory animal clinic at the University of Illinois in Urbana. Defendant, C. Iber and Sons, Inc., was the coordinating contractor for the Animal Clinic Project (Project). Defendant, McCarthy Brothers Company, a prime contractor on the Project, was assigned, in part, to erect structural steel.

On October 9, 1980, plaintiff was assisting in a welding operation at the construction site. Plaintiff was working beneath a steel girder that had been previously suspended by a rope. According to the record, the rope severed and the girder fell, striking the plaintiff on the head and upper back. An examination and X rays taken immediately after the incident revealed that plaintiff's injuries included a "sprained back and a chip fracture of the third lumbar vertebra."

Thereafter, on October 30, 1980, plaintiff brought an action for damages against defendants in the circuit court of Champaign County. The complaint alleged that plaintiff sustained injuries as a result of defendants' failure to properly supervise the safety precautions taken at the job site by permitting the steel girder to be suspended by a rope, in violation of the Illinois Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, par. 60 *et seq.*).

A jury trial commenced on March 4, 1985. Two medical experts in the area of orthopedic surgery were called to testify. Dr. Bharat Mehta, plaintiff's treating physician, was called to testify at trial by the plaintiff. Dr. Robert Mussey, a nontreating physician, was called by defendant C. Iber and Sons, Inc.

Plaintiff also sought to introduce the evidence deposition of Dr. Donald Miller, a nontreating physician. The trial court found that Dr. Miller's opinions were based on both subjective and objective findings and excluded the deposition in its entirety.

At the conclusion of the trial, the jury returned a verdict for the plaintiff against both defendants and damages were awarded in the amount of $40,000. Judgment was entered on the verdict and plaintiff's post-trial motion was denied. Plaintiff now appeals.

On appeal, plaintiff does not expressly allege inadequacy of damages. Rather, plaintiff contends that the trial court committed reversible error in excluding the evidence deposition of Dr. Donald Miller.

The record reveals that approximately four months prior to trial, plaintiff went to Dr. Donald Miller at the suggestion of his attorney. Dr. Miller was aware that plaintiff had been referred to him by an attorney. Miller was also aware that litigation was pending and that he would be called to testify on plaintiff's behalf.

Dr. Miller performed an examination of plaintiff but was not asked to render treatment. Plaintiff provided Miller with a history, which included his version of the occurrence, the injuries sustained and the treatment he received. Thereafter, Miller performed the Valsalva and Allen tests and took X rays of plaintiff. It was estimated that the examination, including the tests performed and the X rays taken, lasted approximately 1 hour and 15 minutes.

Deposition testimony reflects that on direct examination Miller was first asked to relate and summarize the history as given to him by the plaintiff. Next, Miller was asked to disclose, "based both on subjective and objective findings," the results of his physical examination as to the severity and permanency of plaintiff's injury. Miller was also asked whether, from both an objective and subjective standpoint, plaintiff's injuries were caused by the girder falling on him.

Defendants objected during the deposition, arguing that since Miller was a nontreating physician and his opinions were based, in whole or in part, on subjective findings then the testimony was inadmissible hearsay.

Plaintiff sought to introduce Miller's deposition at trial. The trial court refused the use of this deposition "on the ground that, throughout the deposition, there are references made to the formation of the opinion by the doctor based on subjective symptoms of the plaintiff."

Plaintiff contends that pursuant to *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140, Dr. Miller's entire deposition was admissible. Plaintiff urges that *Wilson* expressly contemplated and sanctioned opinion testimony, from either a treating or nontreating physician, based on plaintiff's own statements.

Defendants assert that the deposition was properly excluded as *Wilson* does not extend to the opinions of nontreating physicians based on the subjective complaints of a plaintiff made in anticipation of trial. We agree.

In *Wilson*, the supreme court held that due to the high degree of reliability of hospital records, an expert may render an opinion based

on facts contained in those records, even if the records themselves are not in evidence. In so holding, the *Wilson* court explicitly adopted Rule 703 of the Federal Rules of Evidence. The rule states:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." Fed. R. Evid. 703; see 28 U.S.C. app. 711 (1982).

As pointed out in the Advisory Committee Notes to Rule 703, facts or data upon which expert opinions are based may, under the rule, be derived from the "presentation of data to the expert outside of court and other than by his own perception." (Fed. R. Evid. 703, Advisory Committee Notes; see 28 U.S.C. app. 711 (1982).) The comment further states:

"[A] physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients ***." Fed. R. Evid. 703, Advisory Committee Notes; see 28 U.S.C. app. 711 (1982).

The *Wilson* court determined that the key element in applying Rule 703 was whether the source of information upon which the expert based his opinion was of a type that is reasonably relied upon by experts in the field. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 193, 417 N.E.2d 1322, 1326; *People v. Pitts* (1982), 104 Ill. App. 3d 451, 458, 432 N.E.2d 1062, 1068.) Further, a court must be satisfied that such information is sufficiently trustworthy. (*Hatfield v. Sandoz-Wander, Inc.* (1984), 124 Ill. App. 3d 780, 788, 464 N.E.2d 1105, 1110.) Considering the source in determining reliability of the information provides a check on the trustworthiness of the opinion and its foundation.

As argued by plaintiff, the *Wilson* court pointed out that Rule 703 makes no distinction between treating and nontreating physicians. Plaintiff suggests that "statements of patients" are included in the Committee Notes as a possible source of information and that, pursuant to *Wilson*, they need not be viewed in the context in which they were made.

There are crucial differences, however, between the information relied on in *Wilson* and that relied on in the instant situation requiring a somewhat different analysis. In *Wilson*, the question of reliability of the source was determined solely from the subject matter, *i.e.*, highly reliable hospital records, rendering the treating and nontreating distinction insignificant. In contrast, the subject matter here, sub-

jective complaints of plaintiff made to his nontreating physician in anticipation of trial, are not so inherently reliable. *Jensen v. Elgin, Joliet & Eastern Ry. Co.* (1962), 24 Ill. 2d 383, 389, 182 N.E.2d 211, 215.

■■ ■ Traditionally, courts have held statements of pain and symptoms are admissible as an exception to the hearsay rule, if made by a patient to a physician for purposes of diagnosis and treatment, on the theory that the desire for proper treatment outweighs any motive to falsify. (*Greinke v. Chicago City Ry. Co.* (1908), 234 Ill. 564, 85 N.E. 327.) Likewise, statements as to the cause of an injury or condition made to a treating physician, have been held admissible because they also fall within the guarantee of truthfulness. (*Shell Oil Co. v. Industrial Com.* (1954), 2 Ill. 2d 590, 119 N.E.2d 224.) However, physical demonstrations capable of simulation or declarations made to a physician who has made an examination shortly before trial, apparently for the purpose of qualifying himself to testify at it, have been found inadmissible based on the theory that they are self-serving. (*Shaughnessy v. Holt* (1908), 236 Ill. 485, 86 N.E. 256.) Rather, the nontreating physician has been limited to testifying to purely objective conditions. *Jensen v. Elgin, Joliet & Eastern Ry. Co.* (1962), 24 Ill. 2d 383, 388, 182 N.E.2d 211, 215; *Rogers v. Chicago & North Western Transportation Co.* (1978), 59 Ill. App. 3d 911, 921, 375 N.E.2d 952, 960; *In re Wheeler* (1980), 86 Ill. App. 3d 564, 569, 408 N.E.2d 424, 428.

As previously noted, the *Wilson* court indicated that the rule makes no express distinction between nontreating and treating physicians. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322.) However, the Advisory Committee Notes to Rule 703 state in part, "[t]he physician makes life-and-death decisions in reliance upon [the sources of information]." (Fed. R. Evid. 703, Advisory Committee Notes; see 28 U.S.C. app. 711 (1982).) Nontreating physicians render no treatment and accordingly make no "life-and-death" decisions, with respect to the person being examined, implying a distinction between treating and nontreating physicians.

Moreover, the rationale of the supreme court in adopting Rule 703 was essentially one of promotion of judicial efficiency within the bounds of fairness to the respective parties. The court pointed out the extreme inefficiency of a system requiring an attorney to produce and examine all the authenticating witnesses. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 193-94, 417 N.E.2d 1322, 1326.) It does not follow that this rationale supports an extension of the *Wilson* holding to include subjective complaints of the plaintiff given to a nontreating physician

in anticipation of trial.

Although *Wilson* has had a liberalizing effect on trial practice and procedure with respect to expert testimony, this court has yet to hold that all of the varieties of information listed in the Committee Notes are reasonably relied upon by medical experts. See *Manning v. Mock* (1983), 119 Ill. App. 3d 788, 801-02, 457 N.E.2d 447, 455.

■ Furthermore, the supreme court has had occasion to consider the application of Rule 703 in assessing the admissibility of expert testimony since its decision in *Wilson*. (*J.L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 483 N.E.2d 273.) However, it has yet to hold that statements to a physician consulted only for the purpose of enabling him to testify are admissible pursuant to *Wilson*. Such a finding under the circumstances here, would be the equivalent of invoking Federal hearsay exception Rule 803(4) (Fed. R. Evid. 803(4); see 28 U.S.C. app. 719 (1982)), which has yet to be adopted in Illinois. For these reasons, we decline to extend *Wilson* to include the information relied upon by this expert.

Plaintiff argues alternatively, that, notwithstanding the subjective findings, the trial court erroneously excluded "portions" of Miller's testimony based solely on objective data. Plaintiff only specifically refers in his brief to one question and answer, and we can only speculate as to which other "portions" he refers. That question and answer read:

"Q. Okay. Doctor, at this point, based upon the materials that you had and the x-rays that you took and strictly limiting your answer to objective evidence or findings only as you have defined that term, do you have any opinion based to a reasonable degree of medical certainty as to whether any of the statements that you have made of abnormality in Mr. Melecosky to a reasonable degree of medical certainty and only based upon objective findings are related to the accident in question?

A. Yes. In my medical abilities I would say that the findings of the tingling and the numbness and the vibratory sensation of the left upper extremity and the rythymic [*sic*] loss of the shoulders and the scars that are certainly evidence of his problems and the back limitation, the atrophy, all objective evidence of his condition."

The trial court denied the use of this question along with the rest of the deposition, reasoning that all of the expert's answers were based on both objective and subjective data.

■ The opinion of a medical expert, who does not treat the pa-

tient but examines him for the purpose of testifying, has been found inadmissible if it rests partly upon the expert's own observation and partly upon a history of subjective symptoms supplied by the patient. (*Crane Co. v. Industrial Com.* (1965), 32 Ill. 2d 348, 353, 205 N.E.2d 425, 428; *Shockley v. Industrial Com.* (1979), 75 Ill. 2d 189, 387 N.E.2d 674.) However, the mere fact that an examining physician obtains a history from a patient does not disqualify his expert testimony based on objective findings. *Shockley v. Industrial Com.* (1979), 75 Ill. 2d 189, 387 N.E.2d 674.

■ In the instant situation, even if the trial court erroneously excluded portions of the deposition based on objective findings, plaintiff has failed to establish that he was prejudiced thereby. The burden is on the party seeking reversal to establish prejudice. (*In re Estate of Trampenau* (1980), 88 Ill. App. 3d 690, 410 N.E.2d 918.) A reviewing court will not reverse unless an error affected the outcome below. (*Baker v. Baker* (1952), 412 Ill. 511, 107 N.E.2d 711; *Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 94 N.E.2d 847.) Moreover, errors in the admission or exclusion of evidence have been found harmless if the facts involved are strongly established by other competent evidence. *Mohler v. Blanchette* (1982), 106 Ill. App. 3d 545, 553, 435 N.E.2d 1161, 1167.

■ Plaintiff argues that had Miller's deposition been admitted, it would have shown the severity and permanency of the injury, the causal connection, and the inability of plaintiff to return to work as an ironworker. We find this testimony cumulative as these factors had been established through other witnesses, principally through Dr. Mehta, plaintiff's treating physician. By and large, Miller's testimony consisted of a recitation and summary of the subjective data given to him by the plaintiff. Accordingly, given the circumstances, the trial court's exclusion of these portions of Dr. Miller's deposition does not constitute reversible error.

For the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

McCULLOUGH, P.J., and MORTHLAND, J., concur.