(No. 63329.—

STANLEY MELECOSKY, Appellant, v. McCARTHY BROTHERS COMPANY *et al.*, Appellees.

*Opinion filed December 19, 1986.—Rehearing denied January 30, 1987.*

210

RYAN and MILLER, JJ., dissenting.

Lester Berry Smith, Ltd., of Peoria (Charles J. Hughes, Lester Berry Smith, and Steven P. Glancy, of counsel), for appellant.

Robert P. Moore, Richard R. Harden, and Wm. Michael LeCrone, of Moore & Associates, of Champaign, for appellee McCarthy Brothers Company.

Craig J. Causeman, of Thomas, Mamer & Haughey, of Champaign, for appellee C. Iber & Sons, Inc.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Stanley Melecosky, brought this action in the circuit court of Champaign County for injuries suffered in a construction-site accident, claiming that his injuries were caused by violations of the Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, pars. 60 through 69). Defendant, C. Iber and Sons, Inc., was the coordinating contractor for the project, while defendant McCarthy Brothers Company was a prime contractor responsible for the erection of structural steel. The jury returned a verdict in favor of plaintiff, and against both defendants, in the amount of $40,000. Plaintiff appealed, claiming that the trial court improperly excluded the evidence deposition of one of plaintiff's medical experts. Plaintiff's appeal asked for a new trial as to damages or, alternatively, a new trial as to damages and liability. The appellate court affirmed. (141 Ill. App. 3d 84.) This court granted plaintiff's petition for leave to appeal. See 103 Ill. 2d R. 315.

In this court, plaintiff raises two questions for review: (1) Did the trial court err in refusing to admit the evidence deposition of a nontreating physician whose opinions were based in part upon plaintiff's subjective statements? and (2) Did the trial court err in refusing to admit

part of the evidence deposition containing the physician's opinion which was allegedly based only upon his objective observations?

Plaintiff was injured on October 9, 1980, while working as an ironworker on the construction of a building on the campus of the University of Illinois in Urbana. Plaintiff was sitting on a beam underneath a steel girder which had been suspended by a rope. The rope broke, causing the girder to fall. The girder landed on the back of plaintiff's head, which was partially protected by his welding helmet, and on plaintiff's upper back. Immediately after the injury he was taken to the Carle Clinic in Champaign, where he was diagnosed as having a sprained back and a chip fracture of the third lumbar vertebra.

Dr. Bharat Mehta, an orthopedic surgeon who treated plaintiff, testified on plaintiff's behalf. Dr. Mehta first saw plaintiff about three weeks after the accident. At this time he diagnosed plaintiff's condition as a lumbosacral strain, a chip fracture of the third lumbar vertebra, and a cervical strain in both shoulders. At a later time Dr. Mehta added to this diagnosis the belief that plaintiff had suffered a compression fracture of the third lumbar vertebra as well as the chip fracture. It was Dr. Mehta's opinion that these injuries were causally related to the accident as related to him by plaintiff.

In Dr. Mehta's view plaintiff's soft-tissue injuries were much more serious and disabling than his bone injuries. He testified that, although people often recover from soft-tissue sprains, the long persistence of plaintiff's disabilities led him to believe that the disabilities would be permanent. He expressed the opinion that plaintiff would never be able to return to heavy lifting as an eight-hour-a-day job. In Dr. Mehta's opinion plaintiff should avoid any work involving heavy and strenuous use of his legs or lower back, should avoid awkward positions such as bending, stooping, or climbing, should avoid any overhead

work which requires him to bend his neck upward, and should not sit in one position for extended periods of time.

Plaintiff also offered the evidence deposition of Dr. Donald S. Miller, an orthopedic surgeon who examined plaintiff shortly before trial. Dr. Miller did not treat plaintiff in any way, but instead was engaged solely to examine plaintiff for purposes of rendering an opinion at trial. He reviewed plaintiff's medical history as recorded by plaintiff's previous physicians, and listened to plaintiff's own recounting of his accident and symptoms. He also performed various tests upon plaintiff. Nearly all of these tests required plaintiff's subjective input as to when and where he felt pain or discomfort. Dr. Miller's opinions were similar to those of Dr. Mehta. He believed that plaintiff would have permanent pain, and a permanent functional loss and restriction of agility.

The trial court ruled that Dr. Miller's opinions as to plaintiff's injuries were all based in part on plaintiff's subjective statements and symptoms. The court therefore refused to admit any of Dr. Miller's deposition into evidence.

Defendant's sole witness with regard to damages was Dr. Robert Mussey, a physician who, like Dr. Miller, examined plaintiff solely in order to render an opinion at trial. Dr. Mussey examined earlier X rays of plaintiff's back, and compared them to new X rays which he took at the time of the examination. He also observed plaintiff's side-bending and leg raising, which he found to be normal, and backbending, which he found to be somewhat restricted. Dr. Mussey testified that he did not ask plaintiff for a history of his injuries, did not ask plaintiff to relate his symptoms, and did no examinations which required plaintiff's subjective input. Based solely on these limited objective observations Dr. Mussey concluded that plaintiff had not suffered a fractured vertebra, but instead had calcium deposits of unknown origin. In addition, from his examina-

tion, he could find no reason why plaintiff could not return to the heavy lifting required of most ironworking. On cross-examination Dr. Mussey admitted that his opinion was based almost entirely upon the X rays of plaintiff's bones. Except for his observation of plaintiff's sidebending and backbending and leg raises, his opinion did not consider potential soft-tissue damage, which would have required the plaintiff's subjective input.

Traditionally in Illinois, subjective statements made to a physician for purposes of treatment have been admissible as an exception to the rule against hearsay. (*Shell Oil Co. v. Industrial Com.* (1954), 2 Ill. 2d 590, 602.) This hearsay exception, however, does not extend to statements made to a nontreating physician who was consulted solely for purposes of rendering an opinion at trial. (*Jensen v. Elgin, Joliet & Eastern Ry. Co.* (1962), 24 Ill. 2d 383, 388; *Greinke v. Chicago City Ry. Co.* (1908), 234 Ill. 564, 571.) Moreover, this court has held that the expert opinion of a nontreating physician is inadmissible if based upon the subjective statements of the party being examined. *Jensen v. Elgin, Joliet & Eastern Ry. Co.* (1908), 24 Ill. 2d 383, 389; *Greinke v. Chicago City Ry. Co.* (1962), 234 Ill. 564, 571.

However, in *Wilson v. Clark* (1981), 84 Ill. 2d 186, the court held that a physician may rely upon hospital records in forming an opinion even when the records are not themselves admitted into evidence. Citing as an example Rules 703 and 705 of the Federal Rules of Evidence, the court decided, in the case of hospital records, to follow the modern trend, which is to allow expert witnesses to base their opinions upon facts not already in evidence so long as the facts relied upon are sufficiently reliable. (84 Ill. 2d 186, 194-95.) The *Wilson* court thus held that, "due to the high degree of reliability of hospital records," an expert may base his or her opinion on hospital records even if the records are not themselves in evidence. 84 Ill. 2d 186,

194.

Although *Wilson* dealt only with the admissibility of an expert opinion based upon hospital records, the language of the *Wilson* opinion indicates a general approval of the rationale of Rules 703 and 705. (See also *People v. Lang* (1986), 113 Ill. 2d 407, 464; *People v. Anderson* (1986), 113 Ill. 2d 1, 13.) Rule 703 allows expert witnesses to base an opinion upon inadmissible facts or data:

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." (Fed. R. Evid. 703.)

Rule 705 allows the expert to give an opinion without stating the particular facts or data relied upon; however, such facts and data can be obtained during cross-examination:

> "The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination." Fed. R. Evid. 705.

There are several reasons why the procedure embodied in Rules 703 and 705 is to be preferred to more traditional rules. First of all, the rules are designed "to bring the judicial practice into line with the practice of the experts themselves when not in court" (Fed. R. Evid. 703, Advisory Committee Note), so that facts or data on which an expert would normally rely may serve as the basis of an expert opinion even when those facts or data are inadmissible to prove the truth of the facts asserted therein. Also, in many situations Rules 703 and 705 would obviate the need for a long and time-consum-

ing process of authentication. (See *Wilson v. Clark* (1981), 84 Ill. 2d 186, 194.) In addition, the rules eliminate "the time-consuming process of posing long hypothetical questions." 84 Ill. 2d 186, 195.

In the instant case, Dr. Miller testified that his opinions were based upon a reasonable degree of medical certainty, and it is thus proper to infer that the plaintiff's statements relied upon were such as would reasonably be relied upon by an expert in the field. Since experts in their own practice normally rely on such statements it is consistent with the purposes of Rule 703 to allow Dr. Miller to rely upon them in arriving at his medical opinion. As *Wilson* points out, Rule 703 on its face makes no distinction between treating and nontreating experts. *Wilson v. Clark* (1981), 84 Ill. 2d 186, 192-93.

In *Mannino v. International Manufacturing Co.* (6th Cir. 1981), 650 F.2d 846, 853, the United States court of appeals stated that "[g]reat liberality is allowed the expert in determining the basis of his opinions under Rule 703. Whether an opinion should be accepted is not for the trial judge. That is for the finder of fact." This position also finds support in this court's opinion in *J. L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, where the court upheld the admission of a vocational counselor's expert opinion which was based in part upon a litigant's self-serving statements. The *Simmons* court, relying on *Wilson*, held that the fact that the counselor's opinion was based upon data received from an interested litigant "is relevant only to the weight it should be given, and not to its admissibility." (108 Ill. 2d 106, 117.) Here, had Dr. Miller's opinion been admitted into evidence defendants would have been free to bring out the fact that his opinion was based upon plaintiff's subjective statements and could have suggested to the jury that plaintiff had reason to exaggerate his symptoms. It

would then have been up to the jury to decide what weight to give to Dr. Miller's opinion. We therefore hold that it was error to refuse to admit Dr. Miller's opinions as contained in his evidence deposition.

Moreover, we feel that in this case the error requires a new trial on the issue of damages. Although the jury's verdict is not inadequate as a matter of law, the permanence of plaintiff's pain and disability was a contested issue. Dr. Mussey, defendants' expert, concluded that plaintiff was not likely to suffer permanent pain or disability. The jury's verdict may have reflected the jury's acceptance of Dr. Mussey's opinion. However, Dr. Mehta, the treating physician, concluded that plaintiff's pain and disability probably would be permanent. Dr. Miller's opinion could have bolstered that of Dr. Mehta and, therefore, we cannot say with confidence that the admission of Dr. Miller's opinion would not have affected the jury's verdict.

In view of the above holding we need not reach plaintiff's alternative argument regarding the admissibility of a limited portion of Dr. Miller's opinion.

Since defendants have not challenged the finding of liability against them, there is no reason to relitigate that issue. (See *Home Savings & Loan Association v. Schneider* (1985), 108 Ill. 2d 277, 285; *Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 456.) We therefore reverse the judgment of the appellate court and remand to the circuit court of Champaign County for a new trial as to damages only.

*Reversed and remanded,*
*with directions.*

JUSTICE RYAN, dissenting:

I have no problem with the general incorporation of Rules 703 and 705 of the Federal Rules of Evidence into the law of evidence of this State. However, the majority

opinion expands Rules 703 and 705 to the point that the accepted principles governing the admissibility of evidence are abandoned. Under this opinion, completely untrustworthy evidence is permitted to go to the jury to be given whatever weight the jury may wish to give it. I therefore dissent.

Before opinion evidence is admissible, the court must make a determination that the facts, statements, and opinions relied upon by the expert are trustworthy. "In determining whether reliance by the expert is reasonable, the court should be satisfied both that such items are of the type customarily relied upon by experts in the field, and that such items are *sufficiently trustworthy to make such reliance reasonable.*" (Emphasis added.) (E. Cleary & M. Graham, Illinois Evidence sec. 703.1, at 470 (4th ed. 1984).) Federal Rule 703 does not set any standards against which to measure the trustworthiness of statements or facts relied upon by the expert. However, "the Advisory Committee's Note [to Federal Rule 703] indicates that reliance is reasonable only if the facts, data, or opinions possess trustworthiness in excess of that possessed by the ordinary hearsay statement. Trustworthiness similar to that possessed by a hearsay statement admissible pursuant to any hearsay exception is apparently contemplated." (E. Cleary & M. Graham, Illinois Evidence sec. 703.1, at 471 (4th ed. 1984).) Thus under Federal Rule 703, the court must make the preliminary determination of whether the facts, data, or statements relied upon by the expert are of the type *reasonably* relied upon. (E. Cleary & M. Graham, Illinois Evidence sec. 703.1, at 470, and sec. 104.1, at 29-30 (4th ed. 1984).) It is, therefore, not appropriate to throw a lot of chaff, no matter how untrustworthy, to the jury for it to sort through in search of something it may perceive to be a grain of wheat.

The majority relies on the recent decision of this

court in *J. L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106. However, in that case the trial court had made a preliminary determination to admit the opinion of the expert based on certain hearsay information, whereas in our case the trial court had made the preliminary finding that the opinion of the expert should not be admitted into evidence.

In *Simmons*, the employer, Simmons, had settled a workers' compensation claim of an employee, Boone, and had filed suit against Firestone both for the amount paid to Boone under the workers' compensation settlement and for personal injuries to Boone. The expert who testified in that case was a vocational counselor who stated that, in his opinion, Boone was unemployable. This opinion was based, at least in part, on interviews of the expert with the injured employee. It is not clear from the opinion of this court the purpose for which the interviews were conducted. However, in the appellate court opinion in *Simmons* (*J. L. Simmons Co. v. Firestone Tire & Rubber Co.* (1984), 126 Ill. App. 3d 859, 866), it appears that the expert examined Boone for the purpose of evaluating his compensation claim against Simmons to determine whether Boone was a likely candidate for retraining for other work, and not for the purpose of testifying. If this was the case, then the facts in *Simmons* are so completely different from those present in our case that *Simmons* would be no authority for the holding of the majority here. In any event, trustworthiness as to the facts and statements relied upon by the expert in *Simmons* was not found to be wanting, and the trial judge permitted the expert to testify. In our case, the trial court came to the opposite conclusion.

Many years ago this court noted that when a party to a lawsuit is examined by an expert solely for the purpose of qualifying the expert as a witness at the trial, the

party being examined has an incentive to fabricate and exaggerate his symptoms. The expert should not, therefore, be permitted to state his opinion based on such subjective, self-serving responses. (See *Greinke v. Chicago City Ry. Co.* (1908), 234 Ill. 564, 572-73.) Following this rationale, I would hold that the statements of the plaintiff in this case, made to an expert who was examining him solely for the purpose of testifying in his behalf, were not sufficiently trustworthy to permit the expert to testify as to his opinion, which was based, at least in part, upon the self-serving statements of the plaintiff.

An excellent, well-reasoned article on this subject is found in a recent issue of the Chicago Bar Record. (See Stalmack & Switzer, *Wilson v. Clark and its Progeny: The Application of Federal Rules 703 and 705 in Illinois*, 67 Chi. B. Rec. 4.) The article stresses the requirement that before an expert's reliance on outside data or statements may be found reasonable, the information must be found to be trustworthy. The article also notes that exceptions to the hearsay rule are themselves predicated on notions of trustworthiness and necessity. In fact, it has been noted by one authority that for most practical purposes, the effect of Federal Rule 703 is similar to the creation of additional exceptions to the hearsay rule. (E. Cleary & M. Graham, Illinois Evidence sec. 703.1, at 472 (4th ed. 1984).) The article in the Chicago Bar Record then makes the following observation about the very situation that is presented in our case:

> "For example, consider the situation of the examining physician. Statements by a party to a physician retained to testify at trial are not made for purposes of treatment and, hence, carry little to outweigh the strong motive to falsify under such circumstances. In most cases, therefore, such statements would probably contain *few indicia of trustworthiness sufficient to qualify them for use under Rule 703*, even though the expert describes such state-

ments as being of a type customarily relied on by members of his profession." (Emphasis added.) Stalmack & Switzer, *Wilson v. Clark and its Progeny: The Application of Federal Rules 703 and 705 in Illinois*, 67 Chi. B. Rec. 4, 15-16.

The majority opinion cites no authority for its position other than *Simmons*, which, as noted above, may not be applicable. The general language of Federal Rule 703, when considered in light of the Advisory Committee's Notes, does not support the conclusion the majority draws from the general language of the rule. I find that the opinion of the expert in our case was based in part on untrustworthy, self-serving statements which the plaintiff made in preparation for trial. I believe that the trial court properly excluded the opinion of this expert. I therefore dissent.

JUSTICE MILLER joins in this dissent.