THE CITY OF CHICAGO, Plaintiff-Appellee, v. HOWARD A. ANTHONY, Defendant-Appellant.

First District (3rd Division)   No. 87—2203

Opinion filed August 24, 1988.

Ronald A. Shudnow, of Chicago, for appellant.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Frederick S. Rhine, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

A jury in a condemnation proceeding under the Eminent Domain Act (Ill. Rev. Stat. 1985, ch. 110, par. 7—101 *et seq.*) returned a verdict awarding defendant, Howard A. Anthony (Anthony), $10,910 as full compensation for land taken by plaintiff, the City of Chicago (City), on February 25, 1985.

Defendant appeals and raises the following contentions: (1)

defendant's expert should have been allowed to testify on direct examination regarding sign income offered to defendant under a sign lease proposal; (2) the trial court erred by not allowing defendant's expert to testify regarding other sign income for rental of comparable signs; (3) the verdict regarding just compensation was contrary to the manifest weight of the evidence, against the preponderance of the evidence, and unreasonable and arbitrary; (4) the closing argument of plaintiff's counsel was prejudicial to defendant, and the trial court erred in overruling defendant's objection to counsel's misstatements of law and fact; (5) the sign lease proposal provided to defendant was a *bona fide* offer and should have been admitted into evidence as it corroborates a multiple use of the subject property; (6) the trial court improperly failed to exercise its power to correct the jury verdict, and defendant is entitled to an *additur* to increase the judgment; (7) the trial court erred in failing to allow into evidence a copy of the zoning ordinance and related documents; and (8) the trial judge erred by absenting himself from an offer of proof made by defendant's attorney.

For the reasons stated below, we reverse the judgment of the circuit court and remand this matter for a new trial.

The real estate involved in this appeal is commonly known as 300 South Hermitage Avenue, 1735 West Jackson Boulevard, and 1757 West Ogden Avenue. Anthony was the owner of the land prior to the condemnation action. The land is triangular in shape, with approximately 57 feet of frontage along the easterly side of Ogden Avenue, 15½ feet of frontage along the southerly side of Jackson Boulevard, and 56 feet of frontage along the westerly side of Hermitage Avenue. The site covers approximately 2,182 square feet. The property is zoned C1-3 for restricted commercial use. At the time of condemnation, a two-story brick building stood on the land.

Prior to trial, on November 25, 1985, the City filed a motion *in limine* seeking to exclude from trial any testimony or other evidence relating to a sign lease proposal purportedly received by defendant on February 12, 1985, nine days before commencement of the condemnation action. The proposal, submitted by Outdoor Media, Inc., concerned the leasing of space on the subject property for the erection of an illuminated electrical sign with a face measuring 20 feet by 60 feet. The proposal was for a 15-year lease, with monthly rental payments of $433 during the first three years, increasing to $625 for the last three years, for a total of $93,600 over the course of the leasehold. The proposed leasehold was for 48 inches of ground area.

On January 22, 1986, a hearing was held on the motion *in limine* before Judge Mary Conrad. Judge Conrad entered an order which in-

corporates the transcript of proceedings from the hearing on the motion. The court made the following findings of fact: the sign lease proposal is not an actual lease nor a *bona fide* offer to purchase the property; the document is an initial contact letter setting forth a proposed business opportunity; the proposed rental income is not only contingent upon agreement of the parties but is further subject to various contingencies, including compliance with the zoning ordinances and receipt of city council approval, and accordingly, the rental income is "speculative and certainly futuristic."

Judge Conrad also entered the following conclusions of law: the subject property must be valued as a whole, since a leasehold interest may not be valued separately and added to other estimates of value to form an opinion as to the value of the whole property; the document entitled "sign lease proposal" will not be allowed into evidence, as its introduction would tend to confuse and prejudice the jury; and Federal Rules of Evidence 703 and 705, adopted by the Illinois Supreme Court in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140, and as defined in *Department of Transportation v. Beeson* (1985), 137 Ill. App. 3d 908, 485 N.E.2d 511, apply to this case.

The order accordingly mandated that the sign lease proposal was inadmissible as evidence at trial; testimony which separately valued the proposed sign lease was inadmissible as evidence; and testimony regarding future rental income to be derived from the sign lease proposal was inadmissible. The order further mandated:

> "Within the limited context of testimony regarding highest and best uses of the subject property, testimony of experts who may have considered the sign lease proposal as a factor in reaching a determination of highest and best use of the property may be allowed; however, nothing in this order shall be considered a ruling that otherwise inadmissible evidence will be admitted for all purposes through the testimony of an expert valuation witness, and the Court will so instruct the jury."

The case was reassigned to Judge Alfred T. Walsh on January 22, 1986. On June 12, 1986, after taking the deposition of Donald Engel, defendant's valuation expert, the City filed another motion *in limine*. By its motion, the City sought to bar testimony from Engel regarding the sign lease proposal which had been ruled inadmissible. On July 28, 1986, Judge Walsh entered an order providing, in pertinent part:

> "1. Defendant's expert may express an opinion of value and if asked on direct examination what facts or underlying data did the appraiser take into consideration in making his opinion,

he will not be allowed to testify as to income as set forth in the sign lease proposal.

2. This does not prohibit Defendant's appraiser from testifying about other facts or underlying data of the type which is usually relied upon by appraisers including other sign income in formulating an opinion of value."

At trial the City called two appraisers as expert witnesses. Ripley Mead, Jr., a licensed real estate broker and appraiser, was retained by the City to appraise the subject property in 1983. Pursuant to a motion *in limine* granted by the court, however, Mead was called to testify only to the physical condition of the property and not to estimate its value. Mead stated that he examined the exterior of the building on the property, but did not examine the interior. Mead stated he did not enter the building since there was a sign reading "Do not enter" and due to the building's physical condition. Mead testified that the overall condition of the building was poor.

The City's second expert witness was Sylvester Kerwin, a Member of the Appraisal Institute (MAI), a real estate appraiser and real estate broker. The City retained Kerwin in December 1985 to value the property as of the February 21, 1985, condemnation date. The building on the property was razed some time between February 21, 1985, and the date when Kerwin was called to value the property. Kerwin did not contact defendant regarding the condition of the property as of the condemnation date. Kerwin relied on his prior appraisal experience in the area near the subject property during May and November 1984 and his inspection of the public assessment records to determine the size, shape, and condition of the property.

Kerwin did not inspect the interior of the building, although he stated he was familiar with the exterior from his earlier appraisals of other buildings in the area. Kerwin stated that in making an appraisal, one first determines the highest and best use for the property and then fixes value in relation to the highest and best use. The highest and best use relates to the motivations of the market in the area.

Kerwin testified that the highest and best use of the subject property would be to raze the building and develop it commercially by assembling it with other surrounding parcels which could be bought up. Due to the size and shape of the parcel, it would be difficult to develop the property commercially without also assembling surrounding parcels. Kerwin stated that such commercial development might entail the building of a one-story retail outlet such as a 7-11 or White Hen Pantry, perhaps supported by ancillary stores, with space for off-street parking. In forming his opinion as to highest and best use,

Kerwin considered the property's physical condition, the size and triangular shape of the parcel, the street frontage for access and exposure, the lack of off-street parking, and surrounding land uses and development trends in the area.

Kerwin found the fair cash market value of the property, as of February 21, 1985, to be $8,700, that is, 2,183 square feet valued at $4 per square foot. Kerwin stated that the building added no contributory value to the land. Further, the size and shape of the building, in addition to its physical condition (*e.g.*, that windows were boarded) indicated the building had been unoccupied for a number of years before it was razed. Kerwin also testified that, in determining the market value of the subject property, he considered four or five sales of comparable commercial properties. For each sale, he adjusted for location, nearby traffic flow, size, and time of sale, in order to relate the sale to the subject property.

On cross-examination, Kerwin stated he considered the use of the subject property for outdoor advertising in relation to its highest and best use. Kerwin stated that such a use, however, was speculative in that no contract had been entered into; the property owner would have to appear at a zoning hearing to seek approval; the property was within 75 feet of a residential zoning district; and it was unclear whether a sign could be placed on the site itself or would have to be supported physically by the building. Kerwin stated that the use of the property for sign leasing under the sign lease proposal "was not reasonably probable as of the date of evaluation." Kerwin admitted during cross-examination that he did not recall the specific zoning requirements regarding illuminated signs.

Defendant testified that he purchased the subject property on August 19, 1981, for $7,500. At the time of purchase, the brick building was vacant and boarded up. The first floor had space for three commercial stores and the second floor contained three apartments comprising 13 rooms. The land area is 2,180 square feet, and the building contained 3,980 square feet. The building had face brick on each side and common brick on the south side.

Defendant purchased the property with the intention of "rehabbing" it. As of February 21, 1985, the date of condemnation, the plumbing, electrical circuitry, roof, masonry, glazing, and carpentry were in good condition, and the overall condition of the building was good. Defendant made some repairs to the building in 1982 and early 1983, but ceased making repairs after February 1, 1983, when City appraiser Ripley Mead informed him that the City was going to take the property. Since the date defendant purchased the property, there

was substantial growth in the surrounding area, including the building of multiunit residences and single-family dwellings.

On cross-examination, defendant admitted that he never received income from the subject property. He also stated that the mortar on the building needed tuckpointing, some of the plaster had washed away and some plaster was broken, and the floor was warped in some parts of the building. Defendant previously told his appraiser, Donald Engel, that he, defendant, estimated the cost of rehabilitating the building would range from $7,000 to $20,000. Defendant planned to do the rehabilitation work himself and therefore did not have any formal estimates for the work.

Defendant's expert witness at trial was Donald Engel, an MAI, a real estate appraiser and real estate broker. Engel was retained in March 1986 to appraise the subject property. Engel first visited the property on March 22, 1986, when the property was a vacant lot. (The building had been razed in 1985.) Before placing a value on the property, Engel spoke to defendant, examined public records of the Cook County assessor, and reviewed photographs of the property provided by defendant.

In 1985 Engel and his associates appraised 50 to 75 properties in the area surrounding the subject property. Engel described the area around the subject land as "an older neighborhood on the west side of Chicago, approximately two miles west of the Loop which has been in decline for many years, but which now in the last few years has enjoyed some resurgence of activity with a substantial amount of new development and redevelopment." The "dominant force" in the area is the presence of hospitals, including Presbyterian-St. Luke's, Cook County, and University of Illinois.

Engel testified that "the highest and best use of the [subject] property as of February 21, 1985 would be its rehabilitation or reconstruction for commercial uses to take advantage of the substantial traffic that passes the site daily and its availability for sign lease use and income to be generated from that source." Engel's opinion as to the highest and best use was based on his experience of appraising hundreds of properties of similar character throughout the metropolitan area in order to estimate the expense required for rehabilitation.

Engel also examined the City's zoning ordinances relating to illuminated signs, in order to determine the feasibility of use of the property for sign leasing purposes. He concluded that the property "could be used" for sign purposes as proposed in the offer to lease received by defendant. Engel also stated that the placing of the sign, as provided in the sign lease proposal, would be permitted under the zoning

ordinance. Engel believed that there was a demand for the use of the subject property for sign leasing. Engel's opinion is based on: (1) the "offer," *i.e.*, the sign lease proposal received by defendant, which Engel stated as provided by a "reputable" and "successful" sign leasing company; and (2) the results of a survey by Engel and his associates showing that during the past several years there were substantial numbers of sign approvals along the Eisenhower Expressway near the subject property.

Engel's opinion of the value of the property as of February 21, 1985, was $55,000. Engel took into account the value of the underlying land, the then-existing improvement, and the potential income from sign leasing purposes. With regard to potential sign lease income, Engel examined the sign lease proposal itself and spoke with the signer of the proposal letter and individuals in the business of negotiating sign leases. Engel determined that the proposal contained a reasonable rental for the location and that "its achievement was reasonably assumable."

On cross-examination, Engel stated the value of the underlying land was $7,600, and the building added a value of $12,000 to the property. He stated it would be economically feasible to rehabilitate the building, at a cost of approximately $20,000. The building occupied "virtually" the entire site. The sign lease proposal called for erecting a sign on a pole of a four-foot diameter. Engel stated that such a sign could be supported on the property, including on the land itself in the area which the building did not occupy, or by means of running a shaft through the building or on the roof.

After Engel testified, defendant's attorney made an offer of proof regarding what Engel's testimony would have been concerning the following matters to which Engel was not allowed to testify: the contents of the official indexes of the City of Chicago showing applications for illuminated sign approvals submitted to the city council; contents of transcripts from city council meetings regarding such applications; the specific sign income contained in the sign lease proposal received by defendant; and specific sign income being generated by other properties in the market. At the close of trial, the jury returned a verdict of $10,910 as full compensation for the taking of defendant's property. The court entered judgment on the verdict.

On appeal defendant initially asserts that his expert, Donald Engel, should have been allowed to testify to the sign income offered to defendant under the sign lease proposal. Defendant contends that the trial court's preclusion of Engel's testimony violated Federal Rules of Evidence 703 and 705. Further, defendant asserts that "[i]t

was never the intent of Judge Conrad's order \*\*\* to dictate to the expert that he could not consider or testify to the proposed sign income as one of the many factors in the formulation of an overall opinion of value."

Federal Rule of Evidence 703 provides:

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." (Fed. R. Evid. 703.)

Federal Rule 705 provides:

> "The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination." (Fed. R. Evid. 705.)

Federal Rules of Evidence 703 and 705 were adopted by the Illinois Supreme Court in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140.

■ In view of Federal Rules 703 and 705, *Wilson v. Clark*, and other case law interpreting the rules, we find that the trial court committed error in precluding the expert from testifying regarding the value of the sign income. Defendant's expert indicated that he considered the value of the sign income in valuating the property at $55,000. On cross-examination, plaintiff's counsel inquired as to the factors which Engel considered in arriving at that valuation amount. Engel stated the value of the underlying land was $7,600, and that the building added a value of $12,000. The trial court, however, precluded any testimony as to the value of the sign income, a factor which Engel considered in the $55,000 valuation. The trial court's ruling was error and resulted in confusion for the jury regarding Engel's valuation testimony. The error was heightened when, during closing argument, plaintiff's counsel stated that approximately $30,000 was unaccounted for in Engel's valuation amount.

Case law indicates that wide latitude should be given to experts in testifying as to the basis of their opinions. In *Melecosky v. McCarthy Brothers Co.* (1986), 115 Ill. 2d 209, 503 N.E.2d 355, the supreme court held that the trial court erred in refusing to admit the opinions of a nontreating medical expert which were based in part upon subjective statements of the plaintiff. (*Melecosky*, 115 Ill. 2d at 216-17.) In

*Melecosky*, the court quotes *Mannino v. International Manufacturing Co.* (6th Cir. 1981), 650 F.2d 846, 853, where the Sixth Circuit court stated that " '[g]reat liberality is allowed the expert in determining the basis of his opinions under Rule 703. Whether an opinion should be accepted is not for the trial judge. That is for the finder of fact.' " *Melecosky*, 115 Ill. 2d at 216.

*Melecosky* also cites *J. L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 483 N.E.2d 273, in which the court upheld the admission of a vocational counselor's expert opinion which was based in part upon a litigant's self-serving statements. Citing *Wilson*, the court held that the fact that the expert opinion was based upon information received from an interested litigant may affect the weight of the evidence but not its admissibility. (*J. L. Simmons Co.*, 108 Ill. 2d at 117.) The admission in the instant case of valuation testimony by defendant's expert based on the proposed sign lease income would be in accord with the decisions in *Wilson*, *Melecosky*, and *J. L. Simmons Co.*, which allow for liberality in the admission of evidence of the basis of an expert's opinion. The testimony by Engel regarding the value of the sign income clearly comes within that allowable under Federal Rules of Evidence 703 and 705.

■ Further, we hold that the trial court's finding that the rental income from the sign lease proposal is "speculative" and "futuristic" is contrary to the weight of the evidence. (*Laroia v. Reuben* (1985), 137 Ill. App. 3d 942, 485 N.E.2d 496; *Phillips & Arnold, Inc. v. Frederick J. Borgsmiller, Inc.* (1984), 123 Ill. App. 3d 95, 462 N.E.2d 924.) The record indicates that the document presented an offer to lease which was not speculative but was ready to be signed. The document specifically sets forth the terms of a lease agreement, including the type, size, and shape of the sign, the amount of ground space it would cover, the rental price, and the duration of the lease. The proposal was submitted prior to the date of the petition to condemn. Had the proposal been signed by defendant, it would have formed a binding contract. See *Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.* (1986), 114 Ill. 2d 133, 500 N.E.2d 1.

■ Defendant also contends that the trial court erred by not allowing his expert to testify as to sign income from properties other than the subject property. The record indicates that on direct examination, defendant's attorney asked Engel whether his investigation as to market rentals for similar properties disclosed an "actual dollar average amount that is paid for similar type signs." Engel answered affirmatively, and counsel asked him "what [he] found out." Plaintiff's

counsel objected and the trial court sustained the objection.

Defendant cites *Department of Transportation v. Beeson* (1985), 137 Ill. App. 3d 908, 485 N.E.2d 511, which held that the *Wilson* decision and Federal Rules of Evidence 703 and 705 apply to the valuation testimony by appraisal experts regarding comparable sales in eminent domain cases. The *Beeson* court held that an appraiser should have been allowed to testify specifically regarding all comparable sales he considered in valuating certain property. *Beeson*, 137 Ill. App. 3d at 912.

*Beeson* is distinguishable from the instant case in that *Beeson* involved the admissibility of comparable *sales* of properties, while the instant appeal involves the admissibility of comparable *uses* of property for sign leasing and the income generated therefrom. Nevertheless, the analysis in *Beeson* is helpful regarding the issue raised in the instant case, since *Beeson* considers the rationale behind Federal Rules of Evidence 703 and 705. In holding that evidence of comparable sales should be allowed, the court in *Beeson* stated:

> "The application of these rules [Federal Rules of Evidence 703 and 705] to valuation testimony would further the purpose of the rules, which is 'to broaden the basis for expert opinion beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of experts themselves when not in court.' (28 U.S.C.A. R. 703, Notes of Advisory Committee on Proposed Rules, at 98 (1984).)" *Beeson*, 137 Ill. App. 3d at 912.

We believe that in the instant case, defendant's expert should have been allowed to testify as to an average rental income for other signs, insofar as defendant's expert took into account potential sign rental income in determining the value of the subject property. Testimony regarding the market rental income from other similar signs would shed light upon the basis for the expert's opinion regarding the value of the rental income contained in the sign lease proposal.

In asserting that the trial court did not abuse its discretion in refusing to allow into evidence the sign lease proposal, the City cites *City of Chicago v. American National Bank & Trust Co.* (1972), 7 Ill. App. 3d 1006, 288 N.E.2d 627, and *Chicago & Evanston R.R. Co. v. Blake* (1886), 116 Ill. 163, 4 N.E. 488. These two cases, however, involve the admissibility of future plans of an owner for developing his property. In *American National Bank & Trust Co.*, the defendant property owner testified that he had taken preliminary steps to develop an 80-unit building on the property. After an objection by the petitioner was sustained, defendant's counsel made an offer of proof

that the defendant had secured plans for the building and a tentative commitment for financing. The appellate court found that the exclusion of such plans was within the discretion of the trial court and there was no error or abuse of discretion in their refusal. *American National Bank & Trust Co.*, 7 Ill. App. 3d at 1008.

The court in *Blake* also held that the admission or exclusion of such plans of a property owner is within the discretion of the trial court. (*Blake*, 116 Ill. at 167.) If the evidence is offered to enhance damages, by showing a structure would be a profitable investment, the evidence is inadmissible. If the trial court determines that the evidence is offered only to show a use to which the property is adapted, then the evidence is admissible. (*Blake*, 116 Ill. at 167-68.) *Blake* also states, "The practice, however, of introducing such evidence, should not be encouraged, as there is generally more or less danger of its being misunderstood by the jury." *Blake*, 116 Ill. at 168.

*Blake* and *American National Bank & Trust Co.*, however, are distinguishable from the instant case. Defendant here does not seek the admission of evidence of future plans of his own to develop the property. Rather, the proffered evidence in the instant case is regarding a proposal received by defendant from a third party to lease a small area of his property. Even assuming that the holding and analysis of *Blake* and *American National Bank & Trust Co.* apply to the instant case, we find that the proffered evidence is admissible since it would aid the jury in a determination of the fair cash market value of the property for its highest and best use. The purpose of admitting the testimony should be made clear in order to avoid any danger of misunderstanding by the jury.

■ Defendant also contends that the proposed use of the property for advertising is properly designated as a "special use." The use of certain property is properly designated a "special use" where the property "is of such nature and applied to such special use that it cannot have a market value, such as a church, college, cemetery, club house or terminal of a railroad." (*City of Chicago v. Farwell* (1918), 286 Ill. 415, 419-20, 121 N.E. 795.) At the trial of the instant case, defendant failed to present evidence that the proposed use of the property was a "special use," nor do we find any indication in the record that the proposed use for sign leasing qualifies as a "special use." Therefore, defendant's argument regarding the special use doctrine must fail.

Defendant also contends that the verdict as to just compensation was contrary to the manifest weight of the evidence, against the preponderance of the evidence, and unreasonable and arbitrary since the

jury failed to "factor in" the property's availability for sign leasing purposes. Further, defendant asserts that plaintiff's counsel misstated the evidence and law during closing argument, and the trial judge erred in absenting himself from a portion of the offer of proof made by defendant's counsel.

Since we are reversing this cause on the grounds that defendant's expert was improperly precluded from testifying as to the valuation of income from the sign lease proposal, we need not specifically address defendant's arguments regrading the amount of the verdict and the offer of proof. We already have discussed briefly the closing argument of plaintiff's counsel and found that counsel made improper remarks regarding the basis of the valuation by defendant's expert. For the purposes of this opinion, we need not further discuss the alleged misstatements of the evidence during closing argument or the judge's allegedly improper conduct during the offer of proof.

█ Finally, we address defendant's contention that the trial court erred in not allowing into evidence a certified copy of the zoning ordinance. Defendant asserts that the trial court's ruling was erroneous, particularly in view of the fact that courts are required to take judicial notice of all general ordinances of municipal corporations within the State. The court further committed error, defendant asserts, by not allowing into evidence the official indexes and journal of proceedings of the Chicago city council.

The record indicates that defendant's expert was allowed to testify that he reviewed the zoning ordinance and found that the proposed use of the subject property for sign leasing purposes would not violate the ordinance. Defendant's expert testified in detail as to the measurements he made in relation to the distance requirements of the ordinance. The trial court, however, precluded defendant's attorney from introducing into evidence a copy of the ordinance itself or related documents, including minutes of Chicago city council meetings during which specific sign approval ordinances were granted.

We find that the trial court did not abuse its discretion in precluding the admission of these documents. (*Moore v. Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401, 411, 444 N.E.2d 220.) The admission of these documents would have presented cumulative evidence regarding the content of the zoning ordinance, as defendant's expert testified to the ordinance requirements. (See *Rosborough v. City of Moline* (1961), 30 Ill. App. 2d 167, 174 N.E.2d 16.) Further, while the admission of a copy of the ordinance may have provided some help to the jury in reviewing the pertinent ordinance requirements, we do not find that the exclusion of a copy of the ordinance constitutes prejudi-

cial error. In addition, the trial court did not abuse its discretion in precluding the admission of the indexes and journal of proceedings of the city council. Those documents would have provided little help to the jury in their determination of compensation to defendant, as those documents related to matters only tenuously related to the case at hand.

While we find no abuse of discretion regarding the exclusion from evidence of copies of the zoning ordinance and other documents, we are compelled to reverse the judgment of the trial court and remand this matter for a new trial based on our holding that defendant's expert was improperly precluded from testifying as to the valuation of potential income from the sign lease proposal.

For the foregoing reasons, we reverse the judgment of the circuit court and remand this matter for a new trial.

Judgment reversed and cause remanded.

McNAMARA and RIZZI, JJ., concur.