The Chicago and Western Indiana Railroad Company, Appellee, *vs.* Julius Heidenreich, Jr. *et al.*— (George H. Murphy, Appellant.)

*Opinion filed April 18, 1912—Rehearing denied June 5, 1912.*

1. Eminent domain—*it is only necessary for the petitioner to show that it is a corporation de facto.* In a condemnation proceeding by a railroad company it is only necessary for the petitioner to show that it is a corporation *de facto,* but in order to show its existence as such a corporation it is necessary that there be some law under which a corporation of its character could be created.

2. Same—*the act of 1872 did not prevent consolidation of more than two railroad companies organized thereafter.* The act of March 26, 1872, authorizing the consolidation of any corporation then existing, or which might thereafter be organized, with any other corporation then existing or which might thereafter be organized, did not, by reason of its proviso that no more than two corporations *then existing* should be consolidated, prohibit the consolidation of more than two railroad corporations thereafter organized.

3. Same—*whether consolidation was legal cannot be questioned in a condemnation proceeding.* The defendant in a condemnation proceeding cannot urge the objection that the three railroad companies which were merged in the petitioner could not legally be consolidated because their lines were parallel and competing, as such objection involves the determination of the question whether the petitioner is a *de jure* corporation. (*Trust Co.* v. *St. L., I. M. & S. Ry. Co.* 208 Ill. 419, distinguished.)

4. Same—*when de facto corporation may exercise power of eminent domain.* A *de facto* corporation of this State having authority to construct a railroad may exercise the power of eminent domain.

5. Same—*what does not show an abuse of power by petitioner.* The fact that the petitioner in a proceeding to condemn land for additional terminal facilities has not prepared its plans to show what is to be done with the property or what is to be erected upon it does not show an abuse by the petitioner of the power of eminent domain, where the evidence shows that petitioner's terminal facilities are wholly inadequate and that the property is to be used for such purpose.

6. Same—*what does not prevent petitioner from acquiring fee in street.* The fact that the lots sought to be condemned by the petitioning railroad company extend to the center of the street and alley on which they are' situated does not prevent it from acquiring the fee of the entire lots, including the portions extending into the street and alley, even though it may not be able to obtain the consent of the city to lay its tracks in such portions.

7. Same—*the jury cannot assume that consideration named in deeds was not paid.* In a condemnation proceeding the jury have no right to assume that the defendant did not pay for the property the consideration named in his deeds, where there is no evidence tending to impeach the *bona fide* character of the purchases or to show any depreciation·in values since they were made.

8. Same—*the rule as to evidence of sales of similar property.* In a condemnation case, evidence of sales of similar property is proper for the purpose of fixing the value of the property condemned; but no two pieces of property are exactly alike, and it is the right of the party against whom the evidence is offered to show such facts as will enable the jury to understand all the differences between the property to be condemned and that which has been sold.

9. Same—*opinions of witnesses as to value are not, in a proper sense, expert testimony.* Witnesses in a condemnation proceeding may give their opinions as to the value of the property, and the weight to be given such opinions is to be determined by the jury from the knowledge and experience of the witnesses and their capacity to form a judgment; but such opinions are in no proper sense expert testimony, to be based upon hypothetical conditions.

10. Same—*it is improper to allow witness to base opinion upon a list of alleged sales.* The judgment of a witness as to value may be formed, in part, from sales of other property with which he is acquainted and where he knows its advantages and disad-

vantages, the character of improvements and other things affecting the value; but it is not proper to give a witness a list of sales and ask him to form a judgment based upon the hypothesis that the list represents sales.

11. Same—*judgment of witness as to value is his conclusion from known facts.* The judgment of a witness as to value is his conclusion from known facts, and the opinion of one witness, if he appears honest and truthful, may carry more weight than that of others because of his experience and knowledge, but he is an expert only in that sense.

12. Same—*when exclusion of evidence of sales is error.* The exclusion of evidence of the amounts paid for property in the immediate vicinity and in the same situation as the property condemned and having the same advantages and disadvantages is error, even though the undisclosed purchaser was another railroad company, where the negotiations were between the owners and an individual, who took the title in his own name and that of other individuals, and there is nothing to show that the parties were not free from any influence that would make the sales other than the result of a bargain in the open market.

13. Same—*when it is improper to permit jury to take map to jury room.* In a condemnation case, a map of the territory surrounding the property condemned should not be permitted to be taken to the jury room over an objection that it has been changed and altered after its introduction in evidence.

14. Same—*when cross-examination of a witness goes too far.* In the cross-examination of a witness who has given an opinion as to value it is proper to ascertain the extent of his dealings in real estate in order to inform the jury as to his ability to form a judgment; but the witness should not be interrogated about prices of dissimilar property at long distances from the property condemned and the values estimated by witnesses for such property.

15. Same—*the jury may consider whether the city council will consent to the laying of switch track.* Where the defendant in a condemnation case claims that the adaptability of the property for warehouse purposes adds to its value and there is evidence to that effect and that a switch track could be run to the property if the city consented thereto, the jury have a right to judge, from all the evidence, whether that fact adds anything to the value of the property, and it is error to instruct the jury that they have no right to assume anything in regard to the action of the city council.

Appeal from the Superior Court of Cook county; the Hon. William H. McSurely, Judge, presiding.

HOLLETT, SAUTER & HENKEL, and JOHN C. FARWELL, for appellant.

NATHAN G. MOORE, and WILLIAM S. KIES, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an appeal from a judgment of the superior court of Cook county fixing the just compensation to be paid by the appellee, the Chicago and Western Indiana Railroad Company, to the appellant, George H. Murphy, for lots 23, 26, the north seventeen and one-half feet of lot 29 and the undivided one-half of lot 35, in George H. Bliss' subdivision of block 127, in the School Section addition to Chicago, to be taken and appropriated by the appellee for the increase and improvement of its passenger and freight facilities at its terminal station in Chicago.

The appellant filed his motion to dismiss the petition on various grounds and the court overruled the motion. The hearing of the motion and the trial before the jury were both very lengthy and there was continual strife during both, so that it would require a volume to take up in detail the various questions raised. That will not be attempted, but the material and controlling questions will be decided.

It was only necessary for appellee to show that it was a *de facto* corporation, but in order to show its existence as such a corporation it was necessary that there should be some law under which a corporation of its character could be created. (*Gillette* v. *Aurora Railways Co.* 228 Ill. 261.) The petition alleged that the appellee was a corporation organized by consolidation, in January, 1882, of three corporations organized in 1879, 1880 and 1881, under the general act for the incorporation of railroad companies. The three original corporations were the Chicago and Western Indiana Railroad Company, the Chicago and Western Indiana

Belt Railroad Company and the South Chicago and Western Indiana Railroad Company. There was an act in force March 26, 1872, authorizing the consolidation of any corporation then existing or which might thereafter be organized, with any other corporation then existing or which might thereafter be organized, with a proviso that no more than two corporations then existing should be consolidated into one. One ground of the motion was that three railways could not be consolidated. There was a very great number of corporations which had been created by special acts, with diverse and extended powers, and the constitution had prohibited creating new corporations in that way. A general act for the incorporation of railroad companies had been passed and took effect March 1, 1872, under which railroad corporations must be organized in the future. Applying the statutory rule for the construction of statutes, that words importing the singular number may be extended or applied to several persons or things unless such construction would be inconsistent with the manifest intention of the legislature or repugnant to the context of the same statute, the words in the singular would authorize the consolidation of three corporations. The proviso which limited the generality of the act only prohibited the consolidation of more than two of the corporations then existing, so that the construction of the act, according to the statutory rule, was not inconsistent with the manifest intention of the legislature or repugnant to the context of the same act. There was a valid law which authorized the consolidation, and the appellee was a *de facto* corporation.

Another objection made was, that the three corporations could not be consolidated because their lines were parallel and competing. There was a valid law for the consolidation of corporations and a *bona fide* attempt to consolidate under the law, and whether the facts were such as to justify the exercise of the privilege could not be raised in this proceeding. That would have involved a determina-

tion whether the appellee was a *de jure* corporation, and it would be no more competent than it would to raise a question of some defect in the proceeding for consolidation. The case of *Illinois State Trust Co.* v. *St. Louis, Iron Mountain and Southern Railway Co.* 208 Ill. 419, does not sustain the claim. The question there was whether a foreign corporation could exercise the sovereign power of eminent domain conferred upon foreign corporations purchasing railroads in this State but which were forbidden to purchase any parallel or competing line. A *de facto* corporation of this State, with authority to build a railroad, can exercise that power.

The appellant moved the court to require the appellee to exhibit and file its plans to show what would be done with the property or erected upon it. The appellee replied that it had no plans and proved by its engineer that none had been made; that the terminal facilities at the station were insufficient; that the station was occupied by seven or more railroad companies, and the property was to be used for any of the purposes of a terminal station. It is said that the object was to show an abuse of the power to take private property, under the rule in *Tedens* v. *Sanitary District,* 149 Ill. 87. It is clear that there was no abuse of the power and that the property was needed for the intended use.

It was proved that the agent of the appellee offered the appellant $1000 a front foot for his property, which was the valuation put upon the property with great unanimity by the witnesses for appellee on the trial. The evidence justifies the belief that the offer was *bona fide* and that there was a sufficient attempt to agree on the compensation.

The lots extended to the center of the street and alley on which they were situated, and the petition sought to take the whole of the lots, including those parts which were subject to the public easement. It is contended that the petitioner could not take the portions of the lots which were subject to such public easement. There is no foundation

for the claim, and if the appellee could not make any use of the fee for tracks without the consent of the city, it could acquire all rights in the fee and take its chances of securing the consent of the city.

The court did not err in overruling the motion to dismiss the petition.

The petition was filed on June 2, 1910, and the jury awarded to appellant for lot 23 and the north ten feet of lot 26, as the value of the property at that date, $63,550,— property for which the appellant had paid $80,000 less than four years before. The jury awarded $93,450 for lot 26, (except the north ten feet,) the north seventeen and one-half feet of lot 29 and the undivided one-half of lot 35, for which the appellant paid $125,000 one month before the petition was filed. The sums so allowed, although far below the values fixed by witnesses for appellant, were within the range of the testimony, and as the jury saw the property the judgment would not be disturbed if it appeared that appellant had a fair trial. Counsel for appellee say it does not concede that appellant paid the sums mentioned for the property, and that the jury evidently believed that he did not or was intending to speculate on the necessities of the appellee. The jury had no right to assume from anything found in the record that the amounts named were not paid, since there was no evidence tending in any degree to impeach the *bona fide* character of the purchases, or either of them, or to show any depreciation in values since the purchases. It appears to us that the apparently unjust result was reached on account of the manner in which the case was tried and a misapprehension of the effect of the evidence.

The lots fronted east on Federal street and there was an alley in the rear. They were in the midst of a railroad terminal station occupied by a large number of railroads, and the terminal station fronted north on Polk street, an east and west street. On the question of value the appellee

examined a number of witnesses who testified to sales of property north of Polk street in different localities in the neighborhood. It is contended that this evidence was improperly admitted because none of the property was of similar character to the lots in question. Evidence of sales of similar property is legitimate for the purpose of fixing the value of property to be condemned, but no two pieces of property are exactly alike, so that no positive rule can be laid down as to the degree of similarity to justify proof of such sales. The limits of the evidence necessarily rest largely in the discretion of the trial judge. *St. Louis and Illinois Belt Railway Co.* v. *Guswelle,* 236 Ill. 214.

Proof was made of sales in a locality that had been devoted to disreputable houses and the city had required the owners to move their business from that locality, so that the houses were empty, the rental values destroyed, and the value of the property, which the owners desired or were compelled to dispose of, greatly reduced. We cannot say that the discretion of the court was abused by proof of the various sales in the neighborhood, but the appellant was entitled to have the jury understand all the differences between his property, with its present and probable prospective uses, and the property concerning which the sales were proved.

There had been an ordinance, in 1883, in settlement and compromise of questions between the appellee and the city, by which the appellee gave up any right to extend its lines north of Polk street, on which the terminal station fronted, and the court improperly limited the cross-examination of the witnesses for appellee to show that the property north of Polk street had no possibility of railroad connection or of railroad uses such as the property of the appellant had. It is true that the ordinance did not prevent the city from at some future time granting the right to lay tracks north of Polk street, but the appellant had a right to show that there was no probability of such a right being granted. The

question was asked whether there was not a general understanding, and it was generally considered by all persons, that there could be no tracks north of Polk street, and if that fact did not create differences in the property and affect values. The court sustained objections, and thereby prevented a fair and full investigation as to the comparative values of the property. The situation, condition and improvements might have been such as to preclude any probability, or even possibility, of tracks being extended north of Polk street or the city giving consent for such extension.

After proving the sales of property, witnesses were placed on the stand who had been, or were then, furnished with lists of these sales and gave opinions as to the value of appellant's property by consulting these lists, to which the appellant objected. Witnesses may give opinions as to the value of property, and the weight to be given such opinions is to be determined by the jury from the knowledge and experience of the witnesses and their capacity to form a judgment, but such opinions are in no proper sense expert testimony, to be based upon hypothetical states of fact. All persons who are acquainted with property and have opinions of its value may give their opinions to the jury, together with their knowledge of the property and the facts upon which the opinions are based. (*Illinois and Wisconsin Railroad Co.* v. *VonHorn,* 18 Ill. 257; *Keithsburg and Eastern Railroad Co.* v. *Henry,* 79 id. 290; *Johnson* v. *Freeport and Mississippi River Railway Co.* 111 id. 413.) The judgment of the witness may be formed, in part at least, from sales of other property with which he is acquainted, and where he knows its advantages and disadvantages, the character of improvements, and other things affecting the value; but it is not proper to give a witness a list of sales and ask him to form a judgment based on the hypothesis that the list represents sales. The judgment of a witness as to value is his conclusion from known facts, and the opinion of one witness, if he appears honest and

truthful, may carry more weight than that of others because of his experience and knowledge, but he is an expert only in that sense.

The court refused to admit evidence of the amounts paid for property in the immediate locality and in the same situation as the property in question and having the same advantages and disadvantages. The ruling was based on the fact that although the property was purchased by an individual and the title to some lots taken in his own name and to others in the names of non-resident individuals, the money was actually furnished by the Wabash Railroad Company and the property was acquired for the uses of the terminal station. Where a railroad company has located its road across property it is not proper for one owner to show what the company has paid as compensation for other property, because it must have the particular property even if it costs more than its real value. There is also the element of damage to remaining property, differing in almost every case, and the amount paid furnishes no fair criterion of value. The company cannot prove what it has paid because the sale is compulsory and it could have forced a sale at a price to be fixed by a jury. (*Peoria Gas Light Co.* v. *Peoria Terminal Railway Co.* 146 Ill. 372; *Lyon* v. *Hammond and Blue Island Railroad Co.* 167 id. 527; *Schuster* v. *Sanitary District,* 177 id. 626.) The situation of this property was different and quite unusual, and its principal and greatest value was for railroad purposes. It was in the center of a great railroad terminal occupied by a large number of railroad companies. The Wabash freight house and its tracks were on the west side of it, extending north to Polk street. The passenger station, with its tracks, was on the east side of it, also extending to Polk street, and the tracks of the Monon road came up to the south of it and extended across lot 35, of which the appellee owned an undivided one-half. Its value was for a part of the terminal, and it was evident that either then or in the near fu-

ture it would be required for that purpose. No one would establish a permanent business there with the practical certainty that it would be soon destroyed and a removal compelled by a condemnation of the property. The terminal station was really for the use of all these railroads, of which the appellee was the titular head. Although the court refused, on the motion, to permit proof of the ownership of the stock, the appellee brought out, on cross-examination of appellant's witness, the fact that the Wabash, the Monon, the Grand Trunk, the Erie and the Eastern Illinois Railroad Companies owned the entire stock of the appellee. Each railroad occupied its own tracks and freight houses in the terminal under leases from the appellee, and the property was valuable for use particularly by the Monon, or by any of the so-called tenants of the appellee which could reach the property over the leased tracks. It was claimed that the property had value for warehouse purposes, but the engineer of appellee testified that it would be impossible to connect the property by a switch track, which the law requires if practicable. The natural use of the property was as a part of the terminal station, which it was inevitably destined to become. Its best use and greatest value being for railroad purposes it was unlike property in general, and appellant was entitled to its value for its best use. If the other lots were bought for railroad purposes, free from any influence tending to make a comparison unfair, there was no objection to the proof. The only valid objection the appellee could have had would have been that the owners exacted more on account of its necessities, and that could not be so where the buyers were individuals and the intended use unknown. The negotiations for the purchases were between an individual and the owners of the property, who had no reason to suppose that it was being purchased for the appellee, and there is nothing tending to show that the parties were not free from any influence that would make the sales other than the result of a bargain

upon the open market. None of the reasons for excluding evidence of sales where an owner negotiates with a railroad company applied, and we think the court erred in excluding the evidence.

The court did not err in excluding section 2 of the ordinance of 1879, authorizing appellee to cross streets and alleys in its original construction of its road, and did not err in refusing to require appellee to produce its plans on the trial before the jury. It is argued that the plans would have shown an intended extension of the Monon freight house upon the lots. From the situation it would look as though that might be so, but it could make no difference in the valuation by the jury. As the appellee took the whole of appellant's property, it would make no difference to him, in determining the value, whether the Monon freight house or the Monon tracks were extended across it.

The court permitted a map introduced in evidence to go to the jury room against the objection of appellant that it had been changed and altered after it was so introduced. Following the admission of the map in evidence the abstract of record shows the following: "From time to time during the trial additions and alterations were made in said map by the petitioner, to which respondents objected, as hereafter set forth." It was error to deny the motion to exclude the map.

In the cross-examination of a witness who has given an opinion as to value it is proper to ascertain the extent of his dealings in real estate, for the purpose of informing the jury as to his ability to form a judgment; but appellee was permitted, in the cross-examination of appellant's witnesses, to interrogate about prices of dissimilar property at long distances from the property in question and the values estimated by the witnesses for such dissimilar property, which was extending the cross-examination beyond proper limits.

The court instructed the jury that they had no right to assume anything in regard to the action of the city council

in granting permission to cross any street or alley to afford switch track connections with this property. While the city council could not be compelled to grant the permission, the jury had a right to form a judgment, from the situation of the property and its requirements if used for a warehouse, whether it would be reasonable to grant such permission and whether the city council would be likely to do so. The use of the property for warehouse purposes was claimed by the appellant to add to its value, and there was testimony to that effect. To tell the jury that they had no right to assume that the privilege might be granted, eliminated the question of such probabilities and practically destroyed that element of value. There was evidence that a switch track could be run to the property if consented to by the city council, and the jury had a right to judge, from all the evidence, whether that fact added anything to the value of the property.

The court gave the instruction about disregarding the evidence of witnesses so far as such witnesses had magnified or depreciated the value of the property, which was commented upon in *Herrin and Southern Railroad Co.* v. *Nolte,* 243 Ill. 594, and *Chicago, Ottawa and Peoria Railway Co.* v. *Rausch,* 245 id. 477. It was applied to both parties but was misleading, and practically told the jury to pay no attention to testimony of witnesses whose opinions of value they did not regard as correct.

Ninety-eight instructions were asked and fifty-two were given. There was no occasion for giving such a number of instructions, which necessarily consisted of practical repetitions of the same rules of law. Certainly no one would think it necessary to give fifty-two instructions to enable the jury to decide what appellant's property was worth.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*