(No. 67753.—

THE CITY OF CHICAGO, Appellant, v. HOWARD ANTHONY, Appellee.

*Opinion filed March 29, 1990.—Rehearing denied May 31, 1990.*

172

Judson H. Miner, Corporation Counsel, and Kelly R. Welsh, Acting Corporation Counsel, of Chicago (Ruth M. Moscovitch, Kathleen Ransford, Jeffrey Paul Smith and Frederick S. Rhine, Assistant Corporation Counsel, of counsel), for appellant.

Ronald A. Shudnow, of Chicago, for appellee.

Donald T. Morrison, of Waukegan, for *amicus curiae* Lake County Forest Preserve District.

Stephen D. Helm and Paul M. Nero, of Helm & Day, of Naperville, for *amicus curiae* Du Page County Forest Preserve District.

JUSTICE CALVO delivered the opinion of the court:

On February 21, 1985, plaintiff, City of Chicago, filed a complaint in the circuit court of Cook County to condemn a parcel of land owned by defendant, Howard A. Anthony. A jury returned a verdict in the amount of $10,910, and the circuit court entered judgment on the verdict. Defendant appealed, and the appellate court reversed and remanded for a new trial (174 Ill. App. 3d 288). This court allowed plaintiff's petition for leave to appeal. *Amicus curiae* briefs were accepted from the Lake County Forest Preserve District and the Du Page County Forest Preserve District.

The triangular parcel of land sought to be taken in the condemnation proceeding is commonly known as 300 S. Hermitage, 1735 W. Jackson Boulevard and 1757 W. Ogden Avenue in Chicago. At the time of the condemnation, the parcel was improved with a two-story, masonry-constructed commercial retail store building with residential apartments on the second floor. The building was

vacant. Subsequent to the filing of the complaint, the building was demolished. The parcel is located in the vicinity of the Eisenhower Expressway.

Nine days before plaintiff filed its complaint, defendant received a letter, dated February 12, 1985, from Jeffrey J. Berg, real estate manager for Outdoor Media, Inc. The letter was entitled "Re: Sign Lease Proposal." The proposal concerned leasing approximately 48 inches of ground space for an illuminated advertising sign with visibility from the Eisenhower Expressway. The proposal contained the dimensions of the proposed sign, as well as proposed monthly rental payments for a 15-year lease which totaled $93,600. The proposal concluded, "I shall phone your office next week for your thoughts ***."

In an eminent domain case, the only question for a jury to decide is the just compensation to be paid to the owner of the property sought to be condemned. (*Sanitary District v. Johnson* (1931), 343 Ill. 11, 16.) Just compensation is the fair cash market value of the subject property at its highest and best use on the date of the filing of the complaint to condemn. (*Department of Public Works & Buildings v. An Association of Franciscan Fathers* (1977), '69 Ill. 2d 308, 314.) It is provided by statute:

> "[T]he fair cash market value of property in a proceeding in eminent domain shall be the amount of money which a purchaser, willing but not obligated to buy the property, would pay to an owner willing but not obliged to sell in a voluntary sale, which amount of money shall be determined and ascertained as of the date of filing the complaint to condemn." Ill. Rev. Stat. 1983, ch. 110, par. 7–121.

The highest and best use may be the present use to which the property is actually put or:

> "any capacity for future use which may be anticipated with reasonable certainty, though dependent upon circum-

stances which may possibly never occur, \*\*\* if it in fact enhanced the market value of the land in its present condition and state of improvement. The future prospective use affecting value must be a present capacity for a use which may be anticipated with reasonable certainty and made the basis of an intelligent estimate of value." *Crystal Lake Park District v. Consumers Co.* (1924), 313 Ill. 395, 406.

At trial, defendant's expert valuation witness, Donald Engel, was not permitted to testify concerning the dollar amount of the rental income contained in the sign lease proposal. Mr. Engel was also prohibited from testifying about the rental income received from sign lease agreements on other properties. The appellate court reversed, holding that under Federal Rule of Evidence 703 and Federal Rule of Evidence 705, defendant's expert should have been able to so testify.

Rule 703 provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." Fed. R. Evid. 703.

Rule 705 provides:

"The expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination." Fed. R. Evid. 705.

Rules 703 and 705 were adopted by this court in *Wilson v. Clark* (1981), 84 Ill. 2d 186.

On November 25, 1985, plaintiff filed a motion *in limine* to exclude from the trial any testimony or evidence relating to the sign lease proposal, including any

testimony which concerned the appraised value of the sign lease proposal and any testimony which valued the sign lease proposal separately from the value of the land or which considered future rental income from the sign lease proposal.

Defendant filed a response to plaintiff's motion in limine, and a hearing was held on December 10, 1985. On December 20, 1985, a judge (hereafter referred to as the motion judge) ruled on the motion. The motion judge found the property must be valued as a whole, and a lease may not be separately valued as one part to be added to another part. This ruling is consistent with the unit rule of valuation in eminent domain cases, which requires that property be valued as a whole. Because the "measure of recovery for damage to private property caused by a public improvement is the loss which concerns the property itself *** the fair market value of improved property is not the sum of the value of the building and the value of the land computed separately." (Department of Public Works & Buildings v. Lotta (1963), 27 Ill. 2d 455, 456.) The unit rule is applied in eminent domain cases to avoid misleading the jury.

Concerning the admissibility of the sign lease proposal, the motion judge stated her findings: (1) the document was not an offer to purchase the property for cash; (2) the document was not an actual lease; (3) the document was an initial contact letter setting forth a proposed business opportunity; and (4) "the rental income set forth in the document is contingent upon not only both parties agreeing to enter into a leasing agreement, but to the proposed advertising, means, zoning ordinances and receiving City Council clearance." The motion judge specifically found the proposed rental income to be "speculative and certainly futuristic." The judge found the document would tend to confuse the issue of highest and best use, would be prejudicial, and would

have the danger of being misunderstood by the jury. The judge ruled the document was inadmissible.

Concerning the use of the sign lease proposal for the purpose of supporting defendant's theory of highest and best use, the motion judge ruled, "The Court will allow testimony related to the specific sign lease proposal which would be acceptable under Federal Rules of Evidence, 703 and 705, which were adopted by the Illinois Supreme Court in 1981 in Wilson v. Clark ***. And also in Department of Transportation v. Charles Beeson ***." The judge also stated:

> "Nothing in this order shall be considered a ruling that otherwise inadmissible evidence will be admitted for all purposes through the testimony of the expert evaluation witnesses, and the Court shall instruct the jury on that. You will see the impact of that after you read the Beeson case."

This ruling was followed by several requests for clarification by counsel for both plaintiff and defendant. The motion judge explained that defendant's expert would be able to testify that in his opinion the subject property has its highest and best use in sign lease advertising. The expert could be asked the basis of his opinion and would be able to say "that there were offers with regard to a sign lease being put on and that was received before, according to the Federal Rules, we are going to be able to get into various things with regard to that sign lease proposal. He's going to be able to say that that was a factor in his consideration of what was the highest and best use." After another request for clarification, the motion judge said the specifics of the rental income contained in the proposal would not be admissible, but defendant's expert "can say that he took into consideration that there would be a rental income that is produced by that property."

The motion judge again clarified her ruling regarding the sign lease proposal, saying the document would be excluded from evidence, but "[t]estimony relating to the document, if it is within 703 and 705, I have no choice but to allow it in that limited context if it fits within the Federal Rules *** unless at a future time at the pretrial you can somehow say that my interpretation of this with regard to the rental income is wrong." The judge also noted, "If we have any further problem with this when you have developed the case, we will be able to decide all of this at pretrial." The judge directed that an order be drafted, noting the order could read that the motion is "half denied and half not denied. But you can work that out by attaching a copy of that transcript to the order."

Plaintiff drafted an order which was signed by the motion judge on January 22, 1986, the same day the case was transferred to another judge (hereafter referred to as the trial judge). Among the conclusions of law, the order stated:

"5. The document entitled sign lease proposal is hereby excluded and shall not be admitted into evidence. The introduction of the document would tend to confuse and prejudice the jury.

6. Federal Rules of Evidence 703 and 705, adopted by the Illinois Supreme Court in *Wilson v. Clark.*, [*sic*] 84 Ill. 2d 186, will be deemed to apply in this cause."

The motion judge then added to conclusion 6, by hand, "as defined in Dept of Transportation v. Beeson, 137 Ill App 3[d] 908." The order continued:

"a. The document entitled Sign Lease Proposal is inadmissible as evidence in the trial of this cause.

b. Testimony which separately values the proposed sign lease hold is inadmissible as evidence in the trial of this cause.

c. Testimony regarding future rental income to be derived from the sign lease proposal is inadmissible as evidence in the trial of this cause.

d. Within the limited context of testimony regarding highest and best uses of the subject property, testimony of experts who may have considered the sign lease proposal as a factor in reaching a determination of highest and best use of the property may be allowed; however, nothing in this order shall be considered a ruling that otherwise inadmissible evidence will be admitted for all purposes through the testimony of an expert valuation witness, and the Court will so instruct the jury.''

The judge then added by hand: "e. [T]he transcript of proceedings is attached hereto." Defendant filed a motion to vacate and/or modify the motion judge's ruling of January 22, 1986, which was denied.

Plaintiff later deposed defendant's expert valuation witness, Don Engel. Mr. Engel's appraisal report and his testimony during the deposition disclosed he had considered future rental income from the sign lease proposal in reaching his opinion of the fair cash market value of the defendant's property. Plaintiff filed another motion *in limine* on June 12, 1986, requesting that Mr. Engel be barred from testifying to an opinion of value which was based in part on future rental income previously held to be inadmissible.

At the hearing on plaintiff's motion, the trial judge noted the sign lease proposal "had been gone over and over" at least four or five times. At issue was the interpretation of the trial judge's ruling regarding the admissibility of the sign lease proposal. Plaintiff asked the trial judge for the relief which, in plaintiff's interpretation, the motion judge had already granted: an order barring any testimony concerning future rental income from the sign lease proposal.

The trial judge entered an order which read:

"1. Defendant's expert may express an opinion of value and if asked on direct examination what facts or underlying data did the appraiser take into consideration

in making his opinion, he will not be allowed to testify as to income as set forth in the sign lease proposal.

2. This does not prohibit Defendant's appraiser from testifying about other facts or underlying data of the type which is usually relied upon by appraisers including other sign income in formulating an opinion of value."

At trial, two experts testified for plaintiff. Ripley Mead, Jr., a licensed real estate broker and appraiser, was retained by plaintiff to appraise the subject parcel in 1983. Mr. Mead testified only to the physical condition of the property: in his opinion, the overall condition of the building was poor. Mr. Mead did not express an opinion of value.

Sylvester Kerwin, a real estate broker and appraiser, was retained by plaintiff in December 1985 to value the property as of the condemnation date, February 21, 1985. The building had been razed before Mr. Kerwin was so retained. Mr. Kerwin was familiar with the exterior of the building from earlier inspections of other buildings in the area; he also inspected public assessment records in order to determine the size, shape and condition of the property.

In Mr. Kerwin's opinion, the highest and best use of the subject property would be to raze the building and develop the property commercially by assembling the property with surrounding parcels. According to Mr. Kerwin, the fair cash market value of the property was $8,700: 2,183 square feet valued at $4 per square foot. Mr. Kerwin considered four or five sales of commercial properties, which in his opinion were comparable, in reaching his opinion of the fair cash market value of the property. In order to relate the sale of these properties to the subject property, Mr. Kerwin made adjustments for location, traffic flow, size and time of sale.

According to Mr. Kerwin, the use of the property for sign leasing under the sign lease proposal "was not rea-

sonably probable as of the date of the evaluation." Mr. Kerwin considered such a use to be speculative. During cross-examination, Mr. Kerwin stated he did not recall the specific zoning requirements regarding illuminated signs.

At trial, defendant testified he purchased the subject property for $7,500 on August 19, 1981. There was space for three commercial stores on the first floor of the building, and three apartments, consisting of 13 rooms, on the second floor. The land area of the property was 2,180 square feet. The building was 3,980 square feet. Defendant testified the property was in good condition. Defendant bought the property with the intention of "rehabbing" it. Defendant estimated the cost of rehabilitating the building to be between $7,000 and $20,000. Defendant never received any income from the property.

Mr. Engel, a real estate appraiser, testified as an expert witness for defendant. It was Mr. Engel's opinion that the highest and best use of the property would be its "rehabilitation or reconstruction for commercial uses *** and its availability for sign lease use and income to be generated from that source." Mr. Engel stated that he took into consideration his experience in estimating in determining the cost of rehabilitating the building. Mr. Engel examined the zoning ordinances of the City of Chicago as they related to illuminated signs to determine the feasibility of defendant's property being legally used for an illuminated sign. Mr. Engel also investigated land sales in the area.

Mr. Engel's opinion of the value of the subject property on February 21, 1985, was $55,000. Mr. Engel testified he took into consideration the value of the underlying land, the value of the then existing building structure in its condition at that point in time, and the value of the potential rental income from leasing an ad-

vertising sign. Mr. Engel testified that in arriving at a final estimate of the fair cash market value of the subject property, he took the value of the subject property as a whole and the influence of each factor on its value. Concerning the potential income from sign leasing purposes, Mr. Engel testified he examined the sign lease proposal itself and spoke with the signer of the letter. Furthermore, Mr. Engel testified he spoke with other individuals in the business of negotiating sign leases and reached the conclusion that the proposal was a reasonable rental for this location and its achievement was reasonably probable.

An objection was sustained by the circuit court to Mr. Engel's testimony regarding the general market in outdoor advertising signs. The circuit court also sustained an objection to Mr. Engel's testimony concerning the market rentals for similar properties which might disclose an average dollar amount paid for similar signs. When defendant requested to make an offer of proof, the circuit court informed defendant an offer of proof would be allowed at the close of the evidence. The circuit court also excluded from evidence certain journals of proceedings of the city council, and evidence of the number of sign permit requests made by a certain sign leasing company.

At the close of the evidence, during the offer of proof, defendant's counsel explained that Mr. Engel would have testified concerning the official indexes of the City of Chicago for the years 1982-85. From those indexes, Mr. Engel had counted the applications for illuminated sign approvals which had been submitted to the joint committee on building and zoning. Specifically, Mr. Engel would have testified to the exact number of applications from specific sign leasing companies and the number which had been approved. At this point, the judge instructed defense counsel to continue making his

offer of proof, and to come to his chambers when the offer of proof was completed. The judge then left the courtroom.

The remainder of the offer of proof concerned the specifics of the sign lease proposal about which defendant had wanted Mr. Engel to testify, and the research performed by Mr. Engel concerning the average rental income for advertising signs in the market. Furthermore, Mr. Engel would have testified that the proposed sign income was the type of fact reasonably relied upon by experts in the field in reaching a conclusion of the value of the property. Finally, Mr. Engel would have testified that there was an absence of actual sales of properties with similar signs in the area, and Outdoor Media had the financial ability to fulfill the terms of the proposal for the sign lease.

Defendant appealed. The appellate court reversed the judgment of the circuit court and remanded the cause for a new trial. The appellate court found the excluded testimony of defendant's expert, Mr. Engel, regarding the value of the sign income reflected in the proposed sign lease, to clearly come within that allowable under Federal Rules of Evidence 703 and 705. As such, the appellate court concluded it was error to prohibit defendant's expert from testifying about the sign lease proposal. The appellate court held the circuit court's finding that the rental income from the sign lease proposal was "speculative" and "futuristic" to be contrary to the weight of the evidence.

Further, relying on *Department of Transportation v. Beeson* (1985), 137 Ill. App. 3d 908, the appellate court found "defendant's expert should have been allowed to testify as to an average rental income for other signs, insofar as defendant's expert took into account potential sign rental income in determining the value of the subject property." (174 Ill. App. 3d at 298.) The appellate

court noted testimony concerning the market rental income from other similar signs would serve to "shed light upon the basis for the expert's opinion regarding the value of the rental income contained in the sign lease proposal." 174 Ill. App. 3d at 298.

In *Beeson*, the appellate court held that Rules 703 and 705 "should be applied to the testimony of valuation witnesses, with the result being that all sales considered by valuation witnesses now are admissible" in eminent domain cases. (*Beeson*, 137 Ill. App. 3d at 910.) In the instant case, the appellate court found *Beeson* distinguishable "in that *Beeson* involved the admissibility of comparable *sales* of properties, while the instant appeal involves the admissibility of comparable uses of property for sign leasing and the income generated therefrom." (Emphasis in original.) (174 Ill. App. 3d at 298.) The appellate court found the analysis in *Beeson* helpful since *Beeson* considered the rationale behind Rules 703 and 705.

For the reasons expressed below, we reverse the appellate court and affirm the judgment of the circuit court. We agree that Rules 703 and 705, as adopted by this court in *Wilson*, apply to a qualified expert witness who expresses an opinion of the fair cash market value of a piece of property in an eminent domain case. Rule 703 was intended to "bring the judicial practice into line with the practice of the experts themselves when not in court." (Fed. R. Evid. 703, Advisory Committee's Note.) The advisory committee's note to Rule 703 also states: "If it be feared that enlargement of permissible data may tend to break down the rules of exclusion unduly, notice should be taken that the rule requires that the facts or data 'be of a type reasonably relied upon by experts in the particular field.' " Fed. R. Evid. 703, Advisory Committee's Note.

Rule 703 did not create an exception to the hearsay rule; the underlying facts or data upon which an expert in a particular field is found to have reasonably relied are not admitted for their truth. The underlying facts or data are admitted "for the limited purpose of explaining the basis for the expert witness' opinion." (*People v. Anderson* (1986), 113 Ill. 2d 1, 12.) Even though the facts or data underlying an expert's opinion are not offered for their truth, a "key element in applying Federal Rule 703 is whether the information upon which the expert bases his opinion is of a type that is reliable." (*Wilson*, 84 Ill. 2d at 193.) This court has stated a trial judge need not allow an expert to state the underlying facts or data of his opinion "when [their] probative value in explaining the expert's opinion pale[ ] beside [their] likely prejudicial impact or [their] tendency to create confusion." *Anderson*, 113 Ill. 2d at 12.

Other courts have indicated that it is for the circuit court, in the exercise of its discretion, to determine whether the underlying facts or data upon which an expert bases an opinion are of a type reasonably relied upon by experts in the particular field. (*In re "Agent Orange" Product Liability Litigation* (E.D.N.Y. 1985), 611 F. Supp. 1223, 1243, *aff'd* (2d Cir. 1987), 818 F.2d 187; *Greenwood Utilities Comm'n v. Mississippi Power Co.* (5th Cir. 1985), 751 F.2d 1484, 1494; *Barrel of Fun, Inc. v. State Farm Fire & Casualty Co.* (5th Cir. 1984), 739 F.2d 1028, 1033; *Soden v. Freightliner Corp.* (5th Cir. 1983), 714 F.2d 498, 502; *Bauman v. Centex Corp.* (5th Cir. 1980), 611 F.2d 1115, 1120; *Merit Motors, Inc. v. Chrysler Corp.* (D.C. Cir. 1977), 569 F.2d 666, 673; see J. Weinstein & M. Berger, Weinstein's Evidence, par. 703(03), at 703—16 (1988).) In *Soden*, the court noted that such inquiry into whether the basis for the expert's opinion meets this standard must be made on a case-by-case basis and should "focus on the reliability of the

opinion and its foundation rather than merely on the fact that it was based \*\*\* upon hearsay." *Soden*, 714 F.2d at 503.

We hold that it is for the circuit court, in the exercise of its discretion, to determine whether the underlying facts or data upon which an expert bases an opinion are of a type reasonably relied upon by experts in the particular field. Such a determination shall not be disturbed unless there has been an abuse of discretion.

The opinion of an expert that the underlying facts or data upon which he or she seeks to base an opinion are of a type reasonably relied upon by experts in the particular field is a factor to be considered by a circuit court in the exercise of its discretion. This, however, does not allow the circuit court to "abdicate its independent responsibilities to decide if the bases meet minimum standards of reliability as a condition of admissibility." *In re "Agent Orange"*, 611 F. Supp. at 1245.

The reason for the substantive inadmissibility of the facts or data upon which an expert relies must be considered by the circuit court. If another rule of law applicable to the case excludes the information sought to be relied upon by the expert, the information may not be permitted to come before the jury under the guise of a basis for the opinion of the expert.

As stated by the court in *Barrel of Fun*:

> "[U]nder Rule 703, expert testimony may not be excluded merely because it is based on facts or data that are inadmissible in evidence. However, the Rule does not guarantee the admissibility of all expert testimony that meets its criteria if such testimony runs afoul of other evidentiary requirements. For instance, expert testimony otherwise admissible under Rules 702 and 703 may still be excluded 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ....' Fed. R. Evid. 403." *Barrel of Fun*, 739 F.2d at 1033.

In this case, it is eminent domain law which controls the admissibility of evidence for its truth as well as for the limited purpose of explaining the basis for an expert's opinion pursuant to Rule 703. Because each piece of property is unique, each condemnation case depends upon the facts and circumstances of the particular case. Except for condemnation cases which announce general principles of eminent domain law, it has been noted that precedents may be of little assistance in arriving at the fair cash market value to be paid in each case. (*City of Chicago v. Lord* (1916), 276 Ill. 544, 550.) Because no blanket rule of eminent domain law will be applicable in every condemnation case, "[t]he limits of the evidence necessarily rest largely in the discretion of the trial judge." *Forest Preserve District v. Wing* (1922), 305 Ill. 194; *Chicago & Western Indiana R.R. Co. v. Heidenreich* (1912), 254 Ill. 231, 238.

The proper factors which may be taken into consideration in determining just compensation must be determined by the trial court as a question of law. (*Johnson,* 343 Ill. at 16.) An expert in valuation of property for condemnation purposes may only rely upon facts or data which are legally relevant to the issue of the fair cash market value of the property in question. To the extent that an expert relies upon facts or data which are irrelevant to proving the fair cash market value of the property in question, then the facts or data so relied upon would not be based upon lawful elements of damage and would be of no benefit to a jury. *Illinois Power & Light Corp. v. Talbott* (1926), 321 Ill. 538, 544.

The parties have not directed our attention to any case comparable to the case at bar. Defendant argues his valuation expert should have been allowed to testify about the specifics of the proposed rental income set forth in the sign lease proposal as a partial basis for the

expert's opinion of the fair cash market value of the subject property. Further, defendant argues his expert should have been permitted to testify about the market rental for similar signs. According to defendant, he was prevented from setting forth the basis of his opinion of the fair cash market value of the subject property.

Defendant argues that the sign lease proposal, as an offer to lease part of his property for sign advertising purposes, should be treated under the law of eminent domain as an offer to purchase property for cash. We disagree. *Bona fide* offers to purchase property for cash by persons able to buy, in the absence of evidence of comparable sales, have been held to be some evidence of the fair cash market value of property in condemnation cases. (*Department of Public Works & Buildings v. Lambert* (1952), 411 Ill. 183, 191.) In order for an offer to be *bona fide*, it must "be made in good faith, by a [person] of good judgment, acquainted with the value of real estate and of sufficient ability to pay. It must be for cash and not for credit or in exchange and it must be determined whether made with reference to the fair cash market value of the property or to supply a particular need or fancy." (*City of Chicago v. Harrison-Halsted Building Corp.* (1957), 11 Ill. 2d 431, 438.) The question whether an offer to purchase is *bona fide* is a preliminary question to be determined by the trial court in the exercise of its discretion, and will not be disturbed unless it is manifestly against the weight of the evidence. *Lambert*, 411 Ill. at 191; *Harrison-Halsted*, 11 Ill. 2d at 438.

In this case, the circuit court, in the exercise of its discretion, found the sign lease proposal to be an initial contact letter setting forth a proposed business activity. The circuit court determined that the contingencies to which the sign lease proposal was subject included compliance with zoning ordinances and receipt of city council

approval, as well as agreement of the parties. Because the sign lease proposal was not even an offer to lease, any analogy to an offer to purchase fails. The finding by the circuit court that the proposed rental income was speculative was not, on this record, against the weight of the evidence, and the appellate court erred in reversing this finding of fact by the circuit court.

The circuit court did not abuse its discretion in prohibiting defendant's expert from testifying about the proposed future rental income in the initial contact letter setting forth a proposed business activity because such a proposal is not relevant to the fair cash market value of a piece of property in a condemnation case; it is not a competent factor upon which an expert may reasonably rely in forming an opinion of fair cash market value. The exclusion of the particulars of the document did not violate Rule 703, and the appellate court erred in so holding.

Defendant also argues his valuation expert should not have been precluded from testifying about the average sign rental income from properties other than the subject property. The trial judge's order did not prohibit defendant's expert from "testifying about other facts or underlying data of the type which is usually relied upon by appraisers including other sign income in formulating an opinion of value." Defendant's expert was, however, prohibited from so testifying, and the appellate court, relying on *Beeson*, found this to be error "insofar as defendant's expert took into account potential sign rental income in determining the value of the subject property." The appellate court also found that the average sign rental income of other properties should be admissible "since it would aid the jury in a determination of the fair cash market value of the property for its highest and best use." 174 Ill. App. 3d at 299.

The appellate court in *Beeson* held Rules 703 and 705 applicable to the testimony of expert witnesses in eminent domain cases. *Beeson* held that Rule 703 and Rule 705 apply to the testimony of valuation witnesses, "with the result being that all sales considered by valuation witnesses now are admissible." (*Beeson*, 137 Ill. App. 3d at 910.) The *Beeson* court "believe[d] that Federal Rules of Evidence 703 and 705 should be applied to the valuation testimony of comparable sales." (*Beeson*, 137 Ill. App. 3d at 911-12.) The disputed testimony in *Beeson* concerned evidence of the dollar amounts of comparable sales considered by the defendant's valuation witnesses.

The *Beeson* court indicated that *Wilson* "altered the rule of judicial discretion in the admissibility of comparable sales." (*Beeson*, 137 Ill. App. 3d at 910.) We do not agree; Rule 703 and Rule 705 allow for an expert to express an opinion based on facts or data not admissible in evidence only if the facts or data are of a type reasonably relied upon by experts in the particular field, and are not excluded by another rule of law or a competing policy interest.

In an eminent domain case, in order for facts or data to be reasonably relied upon by an expert in reaching an opinion of the fair cash market value of the property sought to be condemned, the facts or data must be legally relevant. Under the eminent domain law of this State, there may be circumstances where an expert may be permitted to state the particulars of a rental agreement as a basis for an opinion of fair cash market value. (See *Department of Public Works & Buildings v. Kirkendall* (1953), 415 Ill. 214, 223.) Each eminent domain case, however, must be decided on its facts. Even if it might be proper, under the appropriate circumstances, to allow an expert to testify about the average sign rental income received on comparable properties in a condemnation case as an underlying fact or data upon

which the expert relied in reaching an opinion of the fair cash market value of the subject property, such circumstances are not present here. The circuit court correctly prohibited defendant's expert from stating the specifics of the rental income contained in the sign lease proposal as a basis for his opinion of the fair cash market value of the subject property. As a result, the actual dollar amounts of income received pursuant to other sign leasing agreements on other parcels of property would not serve to "shed light" upon the basis for the expert's opinion regarding rental income set out in the sign lease proposal.

Defendant contends the rulings by the circuit court prohibited him from conveying his theory of the highest and best use of his property to the jury. We disagree. Defendant was able to put before the jury his theory of highest and best use: the rehabilitation or reconstruction of the building for commercial uses and the availability of the subject property for sign lease use and income to be generated from that source. Defendant's expert testified he had examined a sign lease proposal and spoke to the signer of the letter. Defendant's expert testified that the sign lease proposal was a factor in his consideration of the highest and best use of the subject property. Defendant's expert testified in detail about the zoning requirements applicable to illuminated signs, and opined that the achievement of using the subject property for advertising sign lease purposes was reasonably probable.

Defendant's expert specifically stated his opinion of value of the subject property, $55,000, was based on a combination of the following factors: the value of the underlying land, the value of the then existing building structure, and the value of the potential income from sign leasing purposes. It was not error to exclude the sign lease proposal itself, or the particulars of the proposed rental income referred to therein. Neither was it

error to exclude the average rental income from other properties. The jury award of $10,910 was within the range of the evidence.

For the foregoing reasons, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court judgment reversed;
circuit court judgment affirmed.*